IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| DONG CHUL KIM, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:19-cv-01920-KPF |
| | : | |
| v. | : | |
| | : | **JOINT ELECTRONIC DISCOVERY** |
| HARTE-HANKS, INC., | : | **SUBMISSION NO: 1 AND** |
| HARTE-HANKS DIRECT, INC., | : | **ORDER** |
| HARTE-HANKS STRATEGIC | : | |
| MARKETING, INC., and NSO, INC. | : | |
| | : | |
| Defendants. | | |

Defendant Harte-Hanks Direct, Inc. ("Harte Hanks" or "Defendant") and Plaintiff Dong Chul Kim ("Plaintiff") (Defendant and Plaintiff collectively the "Parties," and each a "Party") hereby agree to the following ESI Order for production of electronically stored information ("ESI") and paper ("hardcopy") documents. Subject to any governing Protective Order or Confidentiality Agreement entered in this action, this ESI Order governs all production in the matter. The objective of this ESI Order is to facilitate the just, speedy, and inexpensive completion of discovery of ESI and hardcopy documents and to promote, whenever possible, the early resolution of disputes regarding discovery without Court intervention, including disputes pertaining to scope or costs. Nothing in this ESI Order shall limit a Party's right to seek or object to discovery as set out in applicable rules, to rely on any protective order entered in this action concerning protection of confidential or otherwise sensitive information, or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this ESI Order. The mere production of ESI as part of a mass production shall not itself constitute a waiver for any purpose. The parties agree to the following:

(1)     **Definition of ESI.**  "Electronically stored information" or "ESI," as used herein, means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, phones, tablets, file servers, disks, external hard drives, jump drives, or other real or virtualized devices or media, excluding the categories of ESI listed as not discoverable in Section (3)(a)(ii) below. Non-limiting examples of ESI include:

- Digital communications;
- Email server stores (e.g., Lotus Domino, .NSF, or Microsoft Exchange);
- Word processed documents (e.g., Word, Pages, or WordPerfect files and drafts);
- Spreadsheets and tables (e.g. Excel or Lotus 123 or Numbers worksheets);
- Image and Facsimile files (e.g., .PDF, .TIFF, .JPEG, and .GIF images); and
- Databases (e.g., Access).

(2)     **Application to Discovery Requests.**  Subject to the terms of this Joint Submission and

any Confidentiality Agreement between the Parties, the Parties shall produce ESI that is responsive to any request for production; provided, however, that the Parties reserve the right to withhold or redact ESI based on any applicable objection, privilege, or protection from disclosure.

**(3)**     **Preservation.**

    (a)    The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.

        (i)    Absent a showing of good cause by the Party requesting the production of documents (the "Requesting Party"), the Parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the Parties shall preserve all discoverable ESI in their possession, custody, or control. All Parties shall supplement their disclosures in accordance with Federal Rule of Civil Procedure 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created or learned of after a disclosure or response is made.

        (ii)    Absent a showing of good cause by the Requesting Party, the following categories of ESI need not be preserved, searched, or collected for purposes of this Joint Submission, unless they are included as part of or attached to ESI that is otherwise encompassed by document requests: (a) deleted, slack, fragmented, or other data only accessible by forensics; (b) Random Access Memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; (c) Online access data such as temporary internet files, history, cache, cookies, and the like; (d) Back-up data that are substantially duplicative of data that are more accessible elsewhere; and (e) Data remaining from systems no longer in use that is unintelligible on the systems in use.; and (f) Electronic data (e.g., email, calendars, contact data, notes, and text, sms and chat messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), to the extent it is duplicative of data that would otherwise be preserved, searched, or collected.

**(4)**     **Search and Review.**  The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. To the extent the parties have reached agreement as to search and review methods, provide details below:

    (a)    **Custodians and Custodial Collections.** The Parties will meet and confer to

arrive at a list of custodians for whom each party is required to collect and produce responsive ESI from those custodians ("Custodial ESI"), except that the Parties' obligations with respect to Custodial ESI located on a tablet, phone, or jump drive are defined in Section (4)(d) below.  Each Party's custodian list will be subject to the Parties' ongoing good faith efforts to affirmatively identify the custodians most likely to have responsive or relevant information.  The Parties further agree to meet and confer to agree upon the scope and timeframe of custodial productions.

(b)      **Non-Custodial ESI.**  Non-custodial ESI includes electronic files and documents (and any related document family members or embedded files) saved to shared-access electronic drives, repository, or working spaces, including any document management systems ("Non-Custodial ESI").  Absent an order of the Court upon a showing of good cause or stipulation by the Parties, each Party shall only be required to search for Non-Custodial ESI in locations that are reasonably accessible, likely to contain information that is relevant to a Party's claim or defense, and proportional to the needs of the case.

(c)      **Use of Search Terms.**  To ensure proportionality and exclude ESI that is not relevant to the matter, the Parties agree to meet and confer to discuss the use of reasonable search terms and date ranges, each Party will use as a means to identify relevant ESI for review and production, with an expectation that the Parties will reach an agreement on a set of search terms against an agreed-upon list of sources.

   (i)      It is understood that the search may be an iterative process. Once a search protocol has been agreed to and executed, it may require further refinement or expansion. The Parties will, however, make best efforts to ensure that the first search term lists are as thorough and appropriate as a first list can be. In the event that the producing Party applies the agreed search terms and the resulting data set is of a volume that is disproportionately large to the nature of the case, or contains an unreasonably or disproportionately large number of irrelevant or non-responsive documents (i.e., "false positives" as determined through sampling), the Parties will confer in good faith to further narrow the search terms for that list to arrive at a reasonably sized data set for review and production. Upon a reasonable request to further expand or limit the use of search terms, the Parties will meet and confer and attempt in good faith to reach agreement. If the Parties cannot reach agreement, any dispute shall be presented to the Court for resolution in accordance with the local and Individual Practices of the Court by motion, by the Requesting Party. This search term process shall be limited to a reasonable number of iterations, proportional to the facts of this case and as reasonably necessary based on information derived from discovery previously exchanged.

   (ii)     The fact that one or more search terms is/are found in a file, document, or

other specific ESI does not establish relevance, responsiveness, admissibility, or discoverability.

(iii)   After the Parties have agreed upon search terms or established search terms with the assistance of the Court, the Responding Party shall search for the ESI in accordance with the agreed search terms. The Parties reserve the right to review the ESI and remove any documents believed to be privileged, subject to the work-product doctrine, non-responsive, or otherwise not discoverable and log all documents it believes to be privileged. After the Responding Party searches all relevant databases of ESI using the final search terms for that Party, the Responding Party shall provide the Requesting Party with ESI captured by the search terms, pursuant to this Joint Submission.

(d)   **Tablets, Phones, and Jump Drives.**  Each Party shall only be required to collect and search ESI located on a tablet, phone, or jump drive that is reasonably accessible, non-duplicative, likely to contain information that is relevant to a Party's claim or defense, and if such collection or search would be proportional to the needs of the case.  To the extent a Party is required under this standard to search ESI located on a tablet, phone, or jump drive, that Party shall only be required to conduct a reasonably diligent search of the tablet, phone, or jump drive and shall not be required to use search terms.

**(5)**   **Production.**

(a)   **Form(s) of Production.**  The parties have reached the following agreements regarding the form(s) of productions:

(i)   **De-duplication of Production.**  The Parties shall use reasonable, good faith efforts to avoid the review and production of duplicate ESI. In order to facilitate the efficient review and production of ESI and contain costs, the Parties agree that documents may be de-duplicated globally, i.e., across all custodians using industry standard MD5 hash values prior to producing them. The Requesting Party may, however, upon a showing of good cause, request proportionally limited duplicate documents.  To the extent identical, duplicate copies of the same ESI document are removed from production, all the custodians of the same ESI document (whether removed or produced) shall be identified in the "custodians" or "duplicate custodians" metadata field, to the extent such custodian information is available, in the single unique copy of the same ESI document that is produced.

(ii)   **Production of ESI.**  Except for Excel spreadsheets and similar file formats, as provided below, ESI should be produced: (1) in single page, Group IV compression .tiff images in a unitized manner with affiliated metadata as identified below, if available, unless one or more of the metadata fields would reveal information that has otherwise been properly

redacted as non-responsive, privileged, or subject to a prior written objection; or (2) in .pdf form. Electronic mail shall be produced along with attachments to the extent the message and/or any attachment is responsive, relevant, and not privileged. Email families shall be maintained. In the event a party produces email families as .pdf files, that party shall produce attachments in production sequence immediately following the parent email.  A message and its attachment(s) shall not be withheld from production solely based on the fact that one or more other attachment(s) to such message are privileged, otherwise exempt from production, or nonresponsive. To the extent the message and/or one or more attachment(s) is privileged, otherwise exempt from production, or nonresponsive, the responsive, nonprivileged document shall be produced along with placeholders indicating that a particular document was withheld from production.  If any party chooses to produce ESI in .pdf form as provided in Paragraph 5(a)(ii)(2), the Requesting Party may request that the Producing Party produce that ESI in the manner described in Paragraph 5(a)(ii)(1).  The Producing Party and the Requesting Party shall meet and confer in good faith to resolve any such request before seeking Court intervention.

Productions made under Paragraph 5(a)(ii)(1) will include these additional specifications if available:

- Load files;
- Bates number branding and appropriate Confidentiality designations (if any) on the face of the image; and
- The following fields and metadata to the extent said information is available in the original metadata:

| Field | Description |
|---|---|
| Bates_Begin | The Bates number of the first page of the document |
| Bates_End | The Bates number of the last page of the document |
| Attach_Begin | The Bates number of the first page of a family of documents |
| Attach_End | The Bates number of the last page of a family of documents |
| Confidential | The confidentiality designation of the document, if applicable |
| Custodian | The custodian in whose file the document was found |
| Duplicate Custodians | The custodians in whose file duplicate copies of the document were found. |
| Author | For non-email ESI only, the author of the document |
| Filename | The filename of a document or, for an email, the subject line |
| From | The sender of the document, if applicable |
| To | The recipients of the document, if applicable, in a semicolon delimited, multi-value list |

| CC | The copy recipients of the document, if applicable, in a semicolon delimited, multi-value list |
|---|---|
| BCC | The blind-copy recipient of a document, if applicable, in a semicolon delimited, multi-value list |
| Subject | The subject line field for each email |
| Time_Zone | The time zone in which the document was processed |
| Sent_Date | For email only, the sent date of the message |
| Sent_Time | For email only, the sent time of the message |
| Create_Date | For non-email ESI only, the creation date or operating system creation date of the document |
| Create_Time | For non-email ESI only, the creation time or operating system creation time of the document |
| Modified_Date | For non-email ESI only, the last modified date or operating system last modified date of the document |
| Modified_Time | For non-email ESI only, the last modified time or operating system last modified time of the document |
| MD5 | The calculated MD5 hash value of the document |
| Native_File | For natively-produced files only, the file path to the location of the native file |
| Text_Path | The file path to the location of the text file in the production volume |
| Redacted | Populated with a "Yes" if document has a redaction |

(iii)   **Load Files**. Any Party producing the documents (the "Producing Party") under Paragraph 5(a)(ii)(1) shall provide Load Files to accompany the .tiff images that are produced to facilitate the use of the produced images by a document management or litigation support system as described above. ESI will be produced with the available metadata for the above referenced metadata fields in a Concordance data (.DAT) file as well as an Opticon image load file that contains the document boundaries associated with the production.

(iv)   **Color.** Where the original of any ESI is in black-and-white, the ESI should be produced in black-and-white. Where the original of any ESI is in color, the ESI should be produced in color (converted into a color JPEG), or in native format.

(v)   **Document Numbering**. Each page of a document produced as .tiff, JPEG image, or .pdf shall have a legible, unique Bates Number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document. Each produced .tiff and JPEG file shall be given a filename that matches the Bates number burned onto the corresponding page. Each page of each production shall have a unique number of up to eight digits. Except for documents produced under Paragraph 5(a)(ii)(2), the unused digits of the

unique number shall be filled with placeholder zeros (0) to facilitate electronic sorting of the documents.  Regardless of file type, the Bates number will (i) be numerically sequential across the production; and (ii) be numerically sequential within a given document. Attachments to documents will be assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

(vi)  **Excel Spreadsheets and Similar File Formats.** Excel spreadsheets and other similar file formats where an image file does not adequately represent the files as maintained in the ordinary course, shall be produced in their Native Format, including the formulae embedded in the spreadsheet and any Metadata contained in the file.  Files produced in Native Format shall be named with a sequential Bates number followed by the file extension. A placeholder .tiff with language "Document Produced in Native" or similar language shall be included for each native file produced.  To the extent native files, including electronic spreadsheets, are not practically able to be redacted in their native format, production shall be made in .tiff format.  In such instance, if a Requesting Party subsequently demonstrates a genuine need for such file in Native Format, the Producing Party shall produce the file in Native Format, making redactions as provided in Section (5)(a)(ix) below.

(vii)  **Production Media.**  The Producing Party shall produce documents on readily accessible, computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, external USB hard drive (with standard PC compatible interface). The Producing Party may provide the documents via secure FTP site. The Producing Party shall accompany all document productions with a transmittal cover letter or covering note served with the FTP transmittal identifying by Bates number the documents produced.

(viii)  **Optional Procedure for Hard-Copy Documents.**  Documents that exist solely in physical hard-copy may be converted into static images and produced following the same procedures outlined herein. The metadata shall indicate document breaks. If a document is more than one page, to the extent possible, the utilization of the document and any attachments or affixed notes shall be maintained as it existed in the original file or computer of the Producing Party. The TIFF files shall be scanned with Optical Character Recognition ("OCR") software, and the OCR text will be produced as a separate, document level, word-searchable .txt file. If this procedure is used, hard-copy documents shall be reproduced such that the clarity and legibility of the content is sufficiently similar to the original.

(ix)  **Redactions.**

(A)  To the extent that a document is produced in redacted form, the redacted portion of the document shall bear the designation

"REDACTED".

(B)    If an Excel spreadsheet or other similar file typically produced in Native Format is produced with redactions in TIFF format, pursuant to Section (5)(a)(vi) above, then any hidden data or fields in the file shall be revealed prior to conversion to TIFF and prior to redaction. If such redacted Excel spreadsheet or other similar file is produced in Native Format pursuant to Section (5)(a)(vi) above, the Producing Party shall redact it by deleting all material sought to be redacted and replacing it with the designation "REDACTED".

(x)    **Production of Text Files.**  Other than for materials produced under Paragraph 5(a)(ii)(2), for ESI that will be produced without redactions, the full text from the body of each document will be extracted and produced in a separate, document level, word-searchable .txt file that shall be given a filename that matches the beginning Bates number of the document.  For such material that will be produced with redactions, the redacted text will be produced in a .txt file as specified in Section (5)(a)(ix) above.

(xi)    **English Language.**  To the extent any data exists in more than one language, the data shall be produced in English, if available.  If no English version of a document is available, the non-English version(s) shall be produced but the Producing Party does not have an obligation to produce an English translation of a document.

(b)    **Confidentiality of Produced ESI.**  Responsive ESI shall be produced pursuant to the terms of any Confidentiality Agreement between the Parties.  Any objections to production shall be made pursuant to the Federal Rules of Civil Procedure, the local and individual rules of this Court, and the Federal Rules of Evidence.  If a document is produced subject to a claim that it is protected from disclosure under any governing Protective Order or Confidentiality Agreement, the appropriate confidentiality legend provided for under that Order or Agreement shall be burned electronically on each page of such document.  In the case of native file productions (e.g., Excel files), any confidentiality designations pursuant to the any governing Protective Order or Confidentiality Agreement shall be made by populating the CONFIDENTIAL field.  For any native documents produced, the Producing Party will add a native file field named ("Native Link") within the data load file that confirms the appropriate document filepath information as it resides in the production metadata. If any native file from the production is printed, the printing party shall: (a) mark the paper copy with the appropriate document identification number from the production database and, (b) if the document's CONFIDENTIAL field has been populated, the printing party shall mark the paper copy with the appropriate confidentiality legend as provided for under any governing Protective Order or Confidentiality Agreement.

(c)    **Encryption.**  To maximize the security of information in transit, any media on

which documents are produced may be encrypted by the Producing Party.  In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

(d)     **Privileged Material.**

    (i)     **Inadvertent Production / Claw-Back Agreements.**  Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to F.R.E. 502(d), etc.):

The Parties agree to the application of Federal Rule of Evidence 502(d), and agree that neither the attorney-client privilege nor the work product protection is waived by disclosure connected with this litigation.  The inadvertent production of privileged or work product protected documents, ESI, or other information is not a waiver of the privilege or protection in this case or in any other federal or state proceeding.  If any privileged or work product protected documents are produced, the Receiving Party shall, at the request of the Producing Party, promptly return or destroy such documents (and all copies thereof), including all later created excerpts,  summaries, compilations, and other documents or records that include, communicate, or reveal  the information claimed to be privileged or protected.  A Receiving Party who receives a document that it knows or reasonably should know is privileged shall notify the Producing Party. This Agreement shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).  Nothing contained in this Agreement is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  The Parties agree that employing electronic keyword searching to identify and prevent disclosure of privileged material constitutes reasonable steps to prevent disclosure under Federal Rule of Evidence 502(b)(2).  The Parties acknowledge that any documents that are publicly filed must comply with the Protective Order to be agreed between the Parties and entered prior to production of documents.

A Party's inadvertent failure to designate material and/or information with the appropriate confidentiality legend or designation pursuant to the Stipulated Protective Order shall not be deemed a waiver in whole or in part of such party's claim of confidentiality, either as to the document, the specific information disclosed or as to any other information relating thereto or on the same or related subject matter. As soon as the receiving Party is notified in writing of the inadvertent production, the information must be treated as if it had been timely designated, and the receiving party

must endeavor in good faith to recover all copies of the document which it distributed or disclosed to persons not authorized to access such information.

(e) **Cost of Production**.

    (i)   **Cost Savings**. The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

        **Technology Tools**. The parties may employ technology tools to assist in culling and identifying relevant/responsive documents, including "predictive coding" and email threading. With regard to the use of predictive coding, a party must disclose its use to opposing counsel and reach agreement with opposing counsel or approval from the Court on any use of predictive coding technology in place of human review. The Parties agree to meet and confer in good faith to resolve any objections to the use of a particular technology or process before seeking relief from the Court.

    (ii)   **Disputes**. Any issues or disputes between the Parties relating to the costs associated with obtaining or producing ESI will be subject to the applicable rules and laws governing the production of documents, including but not limited to Federal Rules of Civil Procedure 26 and 34.

**(6)**   **Other Issues**.

(a)   **Generally**. The procedures and protocols set forth in this Joint Submission shall govern the production of ESI in this matter, unless the Parties agree in writing to change them or they are changed by the Court upon a motion by a Party or multiple Parties. This Order shall not enlarge or affect the proper scope of discovery in this litigation, nor imply that discovery produced under the terms of this Joint Submission is properly discoverable, relevant, or admissible in this or in any other proceeding. Additionally, this Joint Submission does not alter or expand the preservation obligations of the Parties. The scope of discovery shall be as set forth in the Federal Rules of Civil Procedure, the local and individual rules of this Court, and applicable case law. The Parties and their counsel further pledge to cooperate in good faith to achieve just, speedy and inexpensive discovery practice.

(b)   **Disputes**. The Parties reserve all objections for matters relating to the production of documents and data that are not specifically addressed in this Joint Submission. Nothing in this Joint Submission shall be deemed to waive or limit any Party's right to object to the production of certain ESI on the ground that the sources are not reasonably accessible because of undue burden, cost, or proportionality. The Parties shall meet and confer in good faith on any issue regarding ESI, as necessary, that arise under this Joint Submission or otherwise.

(c)   **Proportionality**. The proportionality standard set forth in Federal Rule of Civil

Procedure 26(b)(2)(C) shall be applied in all matters related to discovery of ESI, including without limitation the preservation, collection, and production of such information. To further the application of the proportionality standard, requests for production of ESI and related responses shall be reasonably targeted, clear, and as specific as practicable. Nothing in this Joint Submission requires a Party to use unreasonably burdensome or expensive data recovery processes, or to search for Documents or ESI in locations where responsive information is not likely to be found or that are not reasonably accessible, absent a showing of good cause. To the extent a Party believes that responsive data is reasonably likely to be found on data sources that are not reasonably accessible, the Party shall disclose that fact to the other Party. The Parties shall discuss cost sharing if good cause is shown to search locations where responsive information is not likely to be found or locations that are not reasonably accessible.

(d)   **Third Party Documents**.  Although either Party can choose to process documents received from third parties under these protocols, they are not obligated to do so.  A Party that issues a non-Party subpoena ("Issuing Party") may include a copy of this Agreement with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents, ESI, or other discovery obtained pursuant to a non-Party subpoena to all other Parties.  Nothing in this Agreement is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

(e)   **Variance**.  Any practice or procedure set forth herein may be varied by written agreement of the Parties.

(f)   **Objections to ESI Production**.  If either Party objects to producing the requested ESI because of proportionality considerations, undue burden or cost, or some other reason, the Party, at or before the time the production is due, shall describe the nature of the objection with reasonable particularity and indicate whether the producing Party is willing to offer an alternative.  The Parties will meet and confer in an attempt to resolve the objections.

(g)   **Paper Discovery**.  The Producing Party will produce hard copy (i.e., paper) documents in electronic format.  Unless the Parties agree to a different format, such documents shall be produced as image files in .tiff or .pdf format at the Producing Party's expense.  If the Producing Party believes the expense to be unreasonable or disproportionate, the Parties will meet and confer and attempt in good faith to reach agreement.  If the Parties cannot reach agreement, any dispute shall be presented to the Court.

(h)   **Written Discovery Demands and Responses**.  The Parties agree that written demands and responses for discovery, and other notices, by or against a Party may be served by electronic mail, return receipt requested, and that such electronic service shall be deemed proper service under the Federal Rules of Civil

Procedure.

The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the undersigned parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.  This Joint Submission shall apply only to exchanges between the undersigned parties hereto.

**FILOSA GRAFF LLP**

/s/ *Gregory N. Filosa*
Gregory N. Filosa
**Filosa Graff LLP**
111 John Street, Suite 2510
New York, NY 10038
GFilosa@filosagraff.com

*Attorneys for Plaintiff*
*Dong Chul Kim*

**BLANK ROME LLP**

/s/ *Anthony A. Mingione*
Anthony A. Mingione
Jason E. Reisman (admitted *pro hac vice*)
Asima J. Ahmad (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Tel.: (212) 885.5000
AMingione@BlankRome.com
JReisman@BlankRome.com
AAhmad@BlankRome.com

*Attorneys for Defendant*
*Harte-Hanks Direct, Inc.*

SO ORDERED:

Dated: June 10, 2020
       New York, New York

_____